**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEARING,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CORRECTIONAL OFFICER<br>MACHADO, and<br>CORRECTIONAL OFFICER<br>GODINEZ,<br><br>　　　　Defendants.<br>_____ | No. C 08-1712 MMC (PR)<br><br>**ORDER DENYING DEFENDANT GODINEZ'S MOTION FOR SUMMARY JUDGMENT; REFERRING CASE FOR SETTLEMENT PROCEEDINGS; DIRECTIONS TO CLERK**<br><br>**(Docket No. 26)** |

## INTRODUCTION

On March 31, 2008, plaintiff, a California prisoner incarcerated at the Sierra Conservation Center in Jamestown, California, and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983, alleging claims based on the use of excessive force, in violation of the Eighth Amendment, against defendants Correctional Officer Machado ("Machado") and Correctional Officer Godinez ("Godinez"), both correctional officers at Salinas Valley State Prison ("SVSP") at the time the events pertaining to the instant lawsuit occurred. On September 25, 2008, plaintiff filed an amended complaint, which the Court ordered served on both defendants. Defendant Godinez was successfully served; defendant Machado was not served, and, on April 17, 2009, was dismissed from the

action without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.[1] Now before the Court is defendant Godinez's motion for summary judgment. Plaintiff has filed a verified opposition,[2] Godinez has filed a reply, and plaintiff has filed a response to Godinez's reply.

## FACTUAL BACKGROUND[3]

On April 4, 2007, at approximately 7:30 a.m., Machado met plaintiff, an inmate then sixty-one years of age, (see Decl. L. Rivo Supp. Mot. Summ. J. ("Rivo Decl.") Ex. G), to escort plaintiff from the roadway in front of the "chow hall" to plaintiff's housing unit. (Decl. M. Godinez Supp. Mot. Summ. J. ("Godinez Decl.") ¶ 2; Opp'n at 2:1-2, 2:26-28.) Machado handcuffed plaintiff. (Opp'n at 2:3-4.) Godinez "assisted in the escort." (Godinez Decl. ¶ 2.) The two officers escorted plaintiff to his cell front. (Decl. A. Harvey. Supp. Mot. Summ. J. ("Harvey Decl.") ¶ 3.) The control booth operator "released" the door to plaintiff's cell. (Harvey Decl. ¶ 3.) While plaintiff appeared to be inside the cell and the door was still open, the control booth operator "heard one of the escorting officers shout something that sounded like an order." (Harvey Decl. ¶ 4.) "Supervising officers responded to [plaintiff's] cell front. (Harvey Decl. ¶ 4; Godinez Decl. ¶ 8.) The situation was resolved, the door was closed, and supervising officers returned to their original positions. (Harvey Decl. ¶ 4.)

The parties differ as to their accounts of what Machado did and what Godinez saw as they escorted plaintiff to the cell and as they released plaintiff into the cell.

---

[1] Machado no longer works at SVSP and has not been located elsewhere for service of process.

[2] Plaintiff's opposition to defendant's motion for summary judgment is titled "Plaintiff's Motion to Vacate Without Prejudice Defendant Correctional Officer M. Godinez's Motion for Summary Judgment (Fed.R.Civ.P. 56(f).) or, in the Alternative the Motion for Summary Judgment."

[3] The following facts are derived from plaintiff's verified opposition and the exhibits submitted by Godinez in support of the instant motion. The assertions in plaintiff's amended complaint, however, have not been considered as evidence because neither the initial complaint nor the amended complaint is verified. See Fed. R. Civ. P. 56(e) (setting forth evidentiary requirements for supporting and opposing summary judgment motion); Fed. R. Evid. 901 (requiring authentication or identification as condition precedent to admissibility of evidence).

2

A.   Plaintiff's Account

According to plaintiff, the disputed events occurred as follows:

Upon first handcuffing plaintiff to escort him to his cell, Machado "squeezed the handcuffs harder and harde[r]" on plaintiff, and Godinez "stood by and watched plaintiff scream in agony" as Machado did so. (Opp'n at 2:3-6.) "Godinez then watched Machado, while squeezing the handcuffs, shove/walk plaintiff approximately 80 yards from the chow hall to building 3." (Opp'n at 2:8-10.) "G[o]dinez watched Machado, while Machado was shoving plaintiff towards building 3, pull the handcuffs, bending plaintiff's arms up at an angle causing excruciating pain to plaintiff." (Opp'n at 2:11-14.) "Godinez watched plaintiff scream in agony while falling to the ground." (Opp'n at 2:14-15.)[4]

"Godinez then watched Machado shove plaintiff into his cell while still handcuffed." (Opp'n at 2:18-19.) "Godinez then watched Machado twist and jerk the handcuffs for no other reason than to inflict further pain, [to] torture plaintiff." (Opp'n at 2:3-4.) "Godinez then observed Machado shove plaintiff into the hard, metal locker inside plaintiff's cell." (Opp'n at 2:23-24.)[5]  At no time during these events did Godinez intervene with respect to anything Machado did. (Opp'n at 2:7, 15-17, 21-22, 24-25.)

B.   Defendant's Account

According to Godinez, the disputed events occurred as follows:

Godinez "did not see any inappropriate force by [ ] Machado during the escort to the

---

[4] In his amended complaint, plaintiff alleges Machado "lifted plaintiff off the ground by pulling on the handcuffs that were around [p]laintiff's wrists with his arms behind [p]laintiff's back," causing plaintiff additional pain by reason of the "unbearable angle of plaintiff's arms." (AC at ¶ 10.) In his verified opposition, however, plaintiff only describes the fall; he does not describe the manner in which he was returned to a standing position. (See Opp'n at 2:14-17.) As noted, plaintiff's unverified amended complaint is not evidence, and, consequently, cannot be used to support a finding as to such additional use of force.

[5] In his amended complaint, plaintiff alleges Machado's use of force during the course of the above-described events caused plaintiff injury, in particular, partial paralysis in his right hand, perpetual numbness in his wrists, constant pain in his chest, and psychological trauma, including anxiety, depression, and a "constant dread of vulnerability to serious injury because of his advanced age, should prison guards torture him again." (AC at ¶¶ 15-17.) The amended complaint, as noted, is not evidence as it is unverified, and the verified opposition makes no reference to any such injury.

3

housing rotunda." (Godinez Decl. ¶ 2.) Godinez "did not hear [plaintiff] complain about his handcuffs, or scream because the handcuffs were tight." (Godinez Decl. ¶ 2.) "If Officer Machado was squeezing the handcuffs into [plaintiff's] wrists, [Godinez] was not aware of it." (Godinez Decl. ¶ 2.) Plaintiff was "agitated." (Godinez Decl. ¶ 4.) In Godinez's view, this was "likely . . . because [plaintiff] was told he could not speak to a sergeant." (Godinez Decl. ¶ 4.) During the escort, Godinez "did not see [plaintiff] fall to his knees." (Godinez Decl. ¶ 5.)

Once the parties arrived at the cell front and the door was opened, "[plaintiff] stood just inside of the cell door when Officer Machado attempted to remove the handcuffs." (Godinez Decl. ¶ 6.) Godinez stood "just outside of the cell door, approximately three feet away." (Godinez Decl. ¶ 6.) "As Officer Machado attempted to remove the handcuffs, [plaintiff] appeared to intentionally bend at the knees as if he was going to fall to the floor." (Godinez Decl. ¶ 6.) "Officer Machado immediately secured [plaintiff] around the waist area and lifted him back into an upright standing position." (Godinez Decl. ¶ 6.) "Before lifting [plaintiff] back up, Officer Machado loudly asked [plaintiff], 'What are you doing?'" (Godinez Decl. ¶ 6.) "Officer Machado then finished removing the handcuffs and secured [plaintiff] in his cell without further incident." (Godinez Decl. ¶ 6.)

In further support of his motion, Godinez has submitted an SVSP "Medical Report of Injury or Unusual Occurrence" form dated April 11, 2007, i.e., one week after the alleged excessive force incident, which indicates plaintiff reported "no injuries" and made "no comments" at that time. (See Rivo Decl. Ex. F.) Additionally, Godinez has submitted a radiology report of x-rays taken on April 6, 2007, signed by Bruce Horng J. Lin, M.D. ("Dr. Lin"), in which Dr. Lin found "no evidence" of fractures of plaintiff's ribs, hands or wrists and no evidence of soft-tissue swelling of plaintiff's hands or wrists, but which did reveal "mild degenerative changes at the basilar joint." (Rivo Decl. Exs. G, H.) X-rays of plaintiff's hands in September 2007 revealed a degenerative process in the thumbs, which a doctor has explained to plaintiff is likely osteoarthritis of the thumbs, given plaintiff's age. (Rivo Decl. Exs. H, I.)

4

# DISCUSSION

A. <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>id.</u>

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . , since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see also</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>See</u> <u>Celotex</u>, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting

evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Analysis

Plaintiff claims defendants' actions violated his constitutional right, under the Eighth Amendment, to be free from the use of excessive force in the course of a single encounter that can be divided into two parts: (1) the escort from the chow hall to plaintiff's cell, and (2) the release of plaintiff into his cell.

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7. A prisoner need not demonstrate, however, that he suffered serious injury in order to establish an Eighth Amendment violation based on use of excessive force. See id. (holding "absence of serious injury is [ ] relevant to the Eighth Amendment inquiry, but does not end it"); see also Wilkins v. Gaddy, 130 S.Ct. 1175, 1178, 1180 (2010) (noting Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim"; reversing dismissal where district court's determination based solely on finding of "de minimis" injury) (citing Hudson).

Godinez, citing Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007), argues he cannot be held liable for the use of excessive force because he was not an integral participant in any of the acts alleged to be a constitutional violation. See id. (holding liability under § 1983 "predicated on" officer's "integral participation" in alleged violation) (internal quotation and citation omitted). Plaintiff does not contend, however, that Godinez

personally participated in Machado's use of force, but, rather, that Godinez violated plaintiff's Eighth Amendment rights by "watching Machado unnecessarily and wantonly inflict[ ] pain on [p]laintiff without taking any steps to temper or prevent Machado's actions." (Am. Compl. ¶ 22.) Although liability under § 1983 does not attach to "a mere bystander" who had "no role in the unlawful conduct," Boyd v. Benton County, 374 F.3d 773, 780 (9th Cir. 2004), "[a] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene," provided such official had an opportunity to intervene. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (affirming denial of summary judgment in favor of correctional officers where evidence showed officers, at time of alleged improper shooting, were in same control bubble as officer who fired shotgun but took no action to prevent such officer from firing, and officers offered no evidence they lacked opportunity to intervene); see also Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (holding on Fourth Amendment claim of excessive force, "officers can be held liable for failing to intercede only if they had an opportunity to intercede").[6]

      1.    Use of Force and Intervention During the Escort

           a.    Use of Excessive Force by Machado

As noted, plaintiff alleges Godinez violated his constitutional rights by failing to intervene in Machado's use of excessive force against plaintiff. Consequently, the Court, as an initial matter, must consider whether plaintiff has presented evidence that raises a triable issue with respect to whether Machado used excessive force.

Plaintiff, in his verified opposition, states the following with respect to Machado's use

---

[6] The Court notes that neither party has addressed the requisite mental state where an excessive force claim is based on a failure to intervene. Specifically, while a correctional officer who himself uses excessive force can be found liable only if the use of force is "malicious and sadistic" as set forth in Hudson, the Ninth Circuit has not considered whether the Hudson standard also applies to a correctional officer who does not himself use force but, rather, fails to act to prevent the use of force. One circuit, however, has concluded the applicable standard is that of "deliberate indifference," as used in Farmer v. Brennan, 511 U.S. 825 (1994). See Buckner v. Hollins, 983 F.2d 119, 122-23 (8th Cir. 1993). In this instance, the Court need not decide the proper standard, as plaintiff's evidence, when viewed in the light most favorable to him, is sufficient to support a finding that Godinez's actions satisfy the higher standard of culpability required under Hudson. Should the case proceed to trial, however, the parties will be required to address this issue.

of force while escorting plaintiff from the chow hall to his cell: (1) Machado "squeezed the handcuffs harder and harde[r]" on plaintiff, causing plaintiff to scream in agony, and (2) Machado shoved plaintiff toward building three, pulled plaintiff's handcuffs, and bent plaintiff's arms up at an angle that caused him excruciating pain. (Opp'n 2:4-14.)

The Court finds plaintiff has raised a triable issue of fact with respect to whether Machado used force maliciously and sadistically to cause harm, rather than to maintain order and security, during the escort from the chow hall to plaintiff's cell.

### b. Opportunity to Intervene

Godinez argues that even if Machado used excessive force during the escort, Godinez is not liable because there was no opportunity to intervene. Specifically, Godinez asserts (1) he never saw the use of excessive force, and (2) even assuming Godinez was in a position to observe Machado use, in some manner, excessive force, there is no evidence suggesting how Godinez could have intervened in time to prevent any such act.

In support thereof, Godinez offers evidence that (1) he did not hear plaintiff complain about the handcuffs, or scream that the handcuffs were tight, (2) if Machado in fact was squeezing the handcuffs into plaintiff's wrists, Godinez was not aware of it, and (3) he did not see plaintiff fall to his knees. (Godinez Decl. ¶¶ 2, 5.) Further, Godinez states that even though he was aware plaintiff was agitated, he surmised, based on his experience with prisoners who often become agitated when handcuffed, that the reason for plaintiff's agitation was because plaintiff was told before the escort that plaintiff could not speak with a sergeant. (Godinez Decl. ¶ 4.)

As noted, however, plaintiff, in his verified opposition, has offered evidence that Godinez (1) stood by and watched plaintiff scream in agony as Machado squeezed the handcuffs, (2) watched Machado shove plaintiff toward building three and then pull plaintiff's handcuffs and bend plaintiff's arms at an angle that caused him excruciating pain, and (3) watched plaintiff scream in agony as he fell to the ground.

The Court finds plaintiff's evidence is sufficient to raise a triable issue of fact, both with respect to whether Godinez saw Machado use a level of force that Godinez reasonably

8

should have understood was excessive and as to whether Godinez had a sufficient opportunity to intervene.  As to the latter, the Court finds the events occurring during the course of the escort continued for a substantial period of time and are not sufficiently severable to relieve Godinez, as a matter of law, of liability for any such individual event, and, particularly, those events occurring at a later rather than earlier point in the sequence. See, e.g., O'Neill v. Krzeminski, 839 F.2d 9, 12 (2d Cir. 1988) (holding where officer lacked realistic opportunity to prevent another officer's sudden, rapid striking of prisoner, triable issue as to failure to intervene existed as to force used thereafter, where officer was alerted to need to protect prisoner from further abuse).

Accordingly, to the extent plaintiff's claim is based on a failure to intervene in the use of excessive force during the escort, Godinez's motion for summary judgment will be denied.

2.     Use of Force and Intervention During Release into Cell

a.     Use of Excessive Force by Machado

Godinez offers evidence that the only notable event during the release of plaintiff into his cell occurred when plaintiff "appeared to intentionally bend at the knees as if he was going to fall to the floor," after which Machado "immediately secured [plaintiff] around the waist area and lifted him back into an upright position," loudly asked plaintiff what plaintiff was doing, removed the handcuffs, and then secured plaintiff in his cell without further incident. (Godinez Decl. ¶ 6.)  Further, Godinez states the force used to return plaintiff into an upright position was necessary for security reasons because an officer must regain control of an inmate who resists an officer's attempt to secure him. (Godinez Decl. ¶ 7.)  In such circumstances, Godinez explains, "[t]he officer does not know which direction the inmate is going to resist, and the inmate can head-butt the officer or surrounding officers from many angles," and thus, "the officer seeks to maintain the safety of both himself and the inmate." (Godinez Decl. ¶ 7.)

Plaintiff, however, in his verified opposition, states that when Machado released plaintiff into his cell, Machado (1) "shove[d] plaintiff into his cell while still handcuffed," (2) "twist[ed] and jerk[ed] on the handcuffs for no other reason than to inflict further pain,"

9

and (3) "shove[d] plaintiff into the hard, metal locker inside plaintiff's cell." (Opp'n at 2:18-24.)

The Court finds plaintiff has raised a triable issue of fact with respect to whether Machado used force maliciously and sadistically to cause harm, rather than to maintain order and security, when Machado released plaintiff into his cell.

### b. Opportunity to Intervene

Godinez argues that even if Machado used excessive force, Godinez is entitled to summary judgment based on a lack of opportunity to intervene. Specifically, Godinez argues: (1) Godinez did not see any use of force, and (2) Machado's actions occurred too quickly for Godinez to intervene.

With respect to his first argument, Godinez contends there are no facts indicating Godinez saw any use of force in connection with the release because plaintiff necessarily had his back to Machado and Godinez during the release, and, consequently, was not in a position that would allow plaintiff to testify as to what Godinez saw or did not see. Godinez's argument is unavailing as it goes to the weight of plaintiff's evidence, not its admissibility. Further, Godinez himself provides details about what happened inside the cell, from which evidence an inference could be drawn that he was aware of the events of which plaintiff complains. In particular, Godinez, in his declaration, states that plaintiff was standing just inside the cell door at the time Machado attempted to remove his handcuffs, that plaintiff "appeared to intentionally bend at the knees" when Machado attempted to remove the handcuffs, that Machado "cross[ed] the plane of the door" when plaintiff bent at the knees, that Machado immediately secured plaintiff around the waist and lifted him to an upright position, and that Machado thereafter completed removal of the handcuffs. (Godinez Decl. ¶¶ 6, 8.) Further, Godinez states he was only three feet away during the incident. (Godinez Decl. ¶ 6.)

With respect to Godinez's second argument, Godinez contends any assertedly improper lifting of plaintiff after plaintiff bent his knees and the alleged shoving of plaintiff into the metal locker, even if such acts in fact were committed by Machado, happened too

10

fast and that Godinez, at three feet away, was too far away to do anything. (Godinez Decl. ¶ 6.)

The Court finds triable issues of fact exist with respect to whether Godinez had adequate time to intervene. As with the escort, the evidence plaintiff offers in his verified opposition is sufficient to support an inference that the events at the cell were of adequate duration to allow Godinez to intervene. Moreover, as discussed above, plaintiff's evidence of the use of force by Machado prior to the events at the cell is sufficient to support an inference that Godinez had been alerted to a need to intervene, either to prevent Machado's use of excessive force or to respond to such use of excessive force as it occurred. See O'Neill, 839 F.2d at 12.

Accordingly, to the extent plaintiff's claim is based on the events occurring at the time of his release into his cell, Godinez's motion for summary judgment will be denied.

C. Qualified Immunity

Godinez, in addition to the above-described argument that no constitutional violation occurred, argues he is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (internal quotation and citation omitted).

A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). The court may exercise its discretion in deciding which prong of the test to address first, in light of the particular circumstances of the case. Id. With respect to the first prong, the threshold question is: "Taken in the light most favorable to the party asserting the

11

injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). With respect to the second, the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Id</u>. "If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did," such questions of fact are for the jury to determine, and, consequently, summary judgment on the issue of qualified immunity cannot be granted. <u>Sinaloa Lake Owners Assn. v. City of Simi Valley</u>, 70 F.3d 1095, 1099 (9th Cir. 1995).

Here, as discussed above, a genuine issue of material fact exists as to what happened between Machado, Godinez, and plaintiff, such that it is not possible to say on summary judgment that a reasonable correctional officer in Godinez's position would have thought he was not constitutionally required to intervene in Machado's use of force against plaintiff.

Accordingly, Godinez's motion for summary judgment on grounds of qualified immunity will be denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Godinez's motion for summary judgment is hereby DENIED.

2. The court has established a Pro Se Prisoner Mediation Program under which prisoner civil rights cases may be referred to a neutral Magistrate Judge for mediation. The Court finds the instant matter suitable for mediation proceedings prior to setting the matter for trial. The proceedings shall take place within ninety days of the date this order is filed, or as soon thereafter as Magistrate Judge Nandor Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more mediation conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all mediation proceedings, shall file with the Court a report thereon.

<u>The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the court file can be retrieved from the court's electronic filing database (ECF).</u>

3. All communications by plaintiff with the Court must be served on Godinez's counsel by mailing a true copy of the document to Godinez's counsel.

4. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

This order terminates Docket No. 26.

IT IS SO ORDERED.

DATED: March 31, 2010

MAXINE M. CHESNEY
United States District Judge